UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                              609-989-0478
United States Bankruptcy Judge                                      609-989-2259 Fax

June 7, 2012

Eugene D. Roth, Esq.
Law Office of Eugene D. Roth
Valley Pk. East
2520 Hwy 35, Suite 307
Manasquan, NJ 08736
Attorney for Debtor-Defendant, James C. Alberts

Peter and Barbara Allinson
806 Old Joppa Road
Kingsville, MD 21087
*Pro Se* Plaintiffs

                    Re:  In re James and Constance Alberts (Chapter 7) (MBK)
                          Case No. 08-20431
                          Adv. Pro. No. 08-02609

Counselors:

        This matter is before the Court upon the Adversary Complaint filed by Peter and Barbara

Allinson ("Plaintiffs") as against Debtor-Defendant James C. Alberts, which seeks to declare

certain debts non-dischargeable pursuant to 11 U.S.C. § 523(a).  The Court issues the following

ruling:

        I.        **Jurisdiction**

        The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring

all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the

meaning of 28 U.S.C. §§ 157(b)(2)(A), (I) and (J).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

II.    **Background**

A.    **The Bankruptcy Proceedings**

On June 4, 2008 ("Petition Date"), James C. and Constance Alberts (collectively, the "Debtors") filed their voluntary Chapter 7 bankruptcy petition.  On November 17, 2008, Plaintiffs filed an Adversary Complaint against Debtor James C. Alberts individually (hereinafter, the "Debtor"), seeking to declare certain alleged debts owed by Debtor to Plaintiffs non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).  The crux of Plaintiffs' claims is that the Debtor improperly operated the CPD Entities (identified below) to perpetuate a fraudulent scheme relating to certain construction projects, which included construction of the Plaintiffs' residence,[1] thereby causing damage to the Plaintiffs.  On December 19, 2008, Debtor filed an answer to the Adversary Complaint disputing such claims.

Since the Adversary Complaint was filed, the Court has conducted numerous hearings and ultimately scheduled the matter for trial.  Thereafter, the parties agreed to have the matter decided on the papers and the Court directed Plaintiffs and Debtor to file their respective trial briefs.  On February 14, 2012, Debtor filed a trial brief in opposition to the Plaintiffs' allegations.  On April 12, 2012, Plaintiffs submitted to the Court their trial brief in support of the Adversary Complaint.

---

[1] Plaintiffs contracted with the Debtor and the CPD Entities to construct a residence in Virginia (the "Contract").

### B.        The State Court Proceedings

Prior to the Petition Date, Plaintiffs filed a state court complaint in the Circuit Court of Northampton County in Virginia against (i) the Debtor, (ii) Defendant Chris DeBlauw, and (iii) the corporate entities CPD, II, Inc. and Creative Property Development, II, Inc., a/k/a/ Creative Property Development (collectively, the "CPD Entities").   The state court complaint was based on alleged improper conduct arising from the above-referenced Contract.    On September 4, 2009, the CPD Entities and the Plaintiffs entered into a partial settlement agreement which granted a judgment, in the amount of $750,000 (plus court costs and interest at the judgment interest rate), in favor of the Plaintiffs and against the CPD Entities.  See Docket No. 13, Exhibit 3.  The partial settlement agreement states, in relevant part, as follows:

> Findings of Fact.  It is hereby agreed that Creative Property Development, II, Inc. a/k/a Creative Property Development and CPD II, Inc. are Regulants under the Virginia Contractor Transaction Recovery Act § 54.1-1118 et seq. ("the Act") **and that the Judgment arises out of "improper and dishonest" conduct by the Regulant[s] as defined in the Act**; however, nothing herein shall constitute an admission or wrongdoing, or improper or dishonest conduct by [Chris] DeBlauw.
>
> *                              *                              *
>
> Credit for Sums Collected.  **Entry of the Judgment solely represents the compromise of a disputed obligation under § 8.01-35.1 of the Code of Virginia as to the CPD Entities above.** Allinsons may, at their discretion, pursue collection of the Judgment under the Virginia Contractor Transaction Recovery Act, **bankruptcy proceedings involving defendant Alberts in New Jersey** and through the criminal courts.  Any sums recovered in this manner ("Other Payments") shall be credited against the aforesaid judgment.  In the event that the Allinsons later prevail on Count IV ("Piercing the Corporate Veil") of the Amended Complaint, in no event shall DeBlauw be liable for more than one-

half of the Net Judgment Amount.   For the purposes of this agreement, **the Net Judgment Amount shall be defined as the principal Judgment amount ($750,000), plus interest, court costs, minus a credit for any Other Payments (as defined above).**

See Docket No. 13, Exhibit 3 (emphasis added).  On September 21, 2009, the Circuit Court of Northampton County entered a judgment order approving the partial settlement agreement.  See Docket No. 13, Exhibit 1.

### C.      The Criminal Proceedings

Prior to the Petition Date, criminal charges were brought against the Debtor in the United States District Court for the Eastern District of Virginia relating to the above-referenced fraudulent scheme allegedly conducted by the Debtor.  On December 6, 2010, the Debtor and the United States Attorney's Office entered into a Statement of Facts whereby the Debtor acknowledged certain facts surrounding the criminal allegations.  Pertinent here, the Debtor admitted to the following:

2.      Beginning in September 2005, and continuing through September 2008, JAMES C. ALBERTS, and other uncharged conspirators, unlawfully and knowingly combined, conspired, and agreed with each other **to execute and devise a scheme and artifice to defraud financial institutions by means of materially false and fraudulent representations**, and in execution of such scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, transmitted for the purpose of executing such scheme and artifice.

3.      At all times relevant to the conspiracy **JAMES C. ALBERTS was a partial owner and/or officer or director of various legal entities** involved in the purchase, sale and development of real estate property in the Eastern District of Virginia, specifically on the Eastern Shore of Virginia, in and

4

about the Northampton County area. **These entities included but were not limited to: Creative Property Development, LLC, Creative Property Development II, LLC, Creative Real Estate Holdings, LLC, CPD II, Inc., CPD at 245 Mason, LLC, and CPD at Kings Creek, LLC among others.**

\*                              \*                              \*

19.     It was a part of the conspiracy to defraud that beginning on or about March, 2006, JAMES C. ALBERTS would falsely certify to financial institutions including Bank of America, Fulton Bank, SunTrust Bank and other lenders that subcontractors had been or would be paid in full for services and materials provided on certain residential construction projects. In fact, the subcontractors had not been paid and subsequently filed liens on the residential projects. As a result of this, certain purchasers of the residential properties had litigation or other collateral expenses to qui[et] title to their property and subsequently obtain lien free possession of the homes. These individuals included, but not necessarily limited to: **Dr. Peter and Barbara Allinson**, Robert C. and Airlia P. Gustafson, and Luciano and Theresa Alessandrini…

See Docket No. 43, Exhibit 8, Statement of Facts filed December 6, 2010 (Criminal No. 2:10cr169), ¶¶ 2, 3 & 19 (emphasis added).

Additionally, Plaintiffs were provided with an opportunity to present testimony and evidence during the sentencing phase of the Debtor's criminal proceeding. Despite Plaintiffs' contentions that they suffered significant monetary damages, the court elected to award the sum of $58,000 in restitution to the Plaintiffs, noting that certain of the claims asserted by the Plaintiffs were not related to the fraudulent scheme before the court. See Docket No. 43, Exhibit 13, Transcript of Sentencing Hearing, p. 32.

5

III.    **Legal Analysis**

A.     **11 U.S.C. § 523**

As the Court previously held in <u>In Re Singh</u>, 2012 WL 993782 (D.N.J. Mar. 23, 2012), § 523 of the Bankruptcy Code provides limited exceptions to discharge of debts in bankruptcy. <u>See</u> 11 U.S.C. § 523.  Section 523(a) states, in relevant part, as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt--
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
>    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>    (B) use of a statement in writing—
>      (i) that is materially false;
>      (ii) respecting the debtor's or an insider's financial condition;
>      (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>      (iv) that the debtor caused to be made or published with intent to deceive; or
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. §§ 523(a)(2) and (a)(4).  Further, as explained in <u>In re Wulster</u>, "[t]he party objecting to the dischargeability of a debt bears the burden of proving by a preponderance of the evidence that the particular debt falls within one of the exceptions to discharge enumerated in . . . [§] 523(a)." 2012 U.S. Dist. LEXIS 22479, *8, 2012 WL 589564 (D.N.J.2012) (citing <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991) and <u>In re Singer</u>, 2010 U.S. Dist. LEXIS 97604 (D.N.J.2010)). Thus, in order to prevail on their claims, Plaintiffs must demonstrate by a preponderance of the

evidence that the Debtor's actions fall within 11 U.S.C. §§ 523(a)(2) or (a)(4).

### B.     Alter Ego Liability

In light of the Debtor's acknowledgement and confirmation of the facts contained in the Statement of Facts in the criminal proceeding, it is clear to this Court that the Debtor did in fact engage in "a scheme and artifice to defraud financial institutions by means of materially false and fraudulent representations" through the operation of the CPD Entities.   While the Debtor contends that he should only be liable to the Plaintiffs in the amount of $58,000 due to the Virginia District Court's findings, the Court finds that the facts and circumstances warrant an alter ego liability analysis as to whether the corporate veil should be pierced to impose further liability on the Debtor.   In that regard, the District Court for the District of New Jersey has recently summarized the standards for piercing the corporate veil as follows:

> In the absence of extraordinary circumstances such as fraud or injustice, a court will not generally pierce the corporate veil. Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982). In New Jersey, two elements must be demonstrated to justify piercing the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." State Capital Title & Abstract Co. v. Pappas Business Servs., LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (internal citations omitted). Various factors may be considered in making these determinations, including, inter alia, the failure to observe corporate formalities, gross undercapitalization, and the absence of corporate records. Id.

Nat'l Enters. v. Wong & Fleming, 2012 U.S. Dist. LEXIS 44891, 22-23 (D.N.J. Mar. 30, 2012).

In this case, the facts and circumstances demonstrate that the Debtor operated the CPD Entities to perpetuate a fraudulent scheme that damaged the Plaintiffs.  In doing so, it is clear to

the Court that adherence to the fiction of separate corporate existence would indeed sanction a fraud.  Accordingly, the Court finds sufficient evidence to pierce the corporate veil to impose further liability on the Debtor.  Specifically, the Court finds that the Debtor is equally liable on the judgment against the CPD Entities in the amount of $750,000 (plus interest at the judgment rate from the date of the judgment order) and that such amount is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4) due to the Debtor's fraudulent conduct.[2]

### IV.    Conclusion

For the reasons set forth above, the Court finds that Debtor James C. Alberts is liable to the Plaintiffs in the amount of $750,000 (plus interest at the judgment rate from the date of the judgment order) based on alter ego liability.  The Court further finds that such amount is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).  Accordingly, the Court enters the attached judgment memorializing its ruling.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: June 7, 2012

---

[2] The Court notes that there is no evidence in the record to suggest that the $58,000 in restitution awarded by the District Court for the Eastern District of Virginia is not included in the $750,000 judgment approved in the state court proceeding.  Thus, the Court will not add the restitution award to the $750,000 judgment.

8